IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Duane BAULEY and April BAULEY

Plaintiffs,

v.

METLIFE HOME LOANS, a division of MetLife Bank, NA, a New Jersey headquartered National Bank, FEDERAL NATIONAL MORTGAGE ASSOCIATION, a Delaware Corporation, FIRST AMERICAN TITLE INSURANCE COMPANY, a California Corporation, WELLS FARGO HOME MORTGAGE, a division of Wells Fargo Bank, NA, a South Dakota headquartered National Bank,

Defendants.

Civil No. 3:10-CV-01034-JE

FINDINGS AND RECOMMENDATION

Terrance J. Slominski
David W. Venables
Slominski and Associates
7100 SW Hampton, Suite 101
Tigard, OR 97223

Attorneys for Plaintiffs

Holger Uhl
McCarthy & Holthus, LLP
8995 SW Miley Rd, Ste. 103
Wilsonville, OR 97070

Attorney for Defendants Metlife Home Loans, Federal National Mortgage Association and First American Title Insurance Company

Craig G. Russillo
Anna M. Helton
Schwabe Williamson & Wyatt, PC
1600-1900 Pacwest Center
1211 SW Fifth Avenue
Portland, OR 97204

Attorneys for Defendant Wells Fargo Home Mortgage

JELDERKS, Magistrate Judge:

Plaintiffs Duane Bauley and April Bauley bring this action against defendants Metlife Home Loans (Metlife), Federal National Mortgage Association (Fannie Mae), First American Title Insurance Company (FATCO), and Wells Fargo Home Mortgage (Wells Fargo). Plaintiffs seek a declaration that a foreclosure sale held by First American and a subsequent transfer to Fannie Mae were void, and a declaration that plaintiffs are consequently the "owners" of certain residential property in Portland, Oregon.

Pending before the court are motions for partial summary judgment and summary judgment brought respectively by plaintiffs and defendant Wells Fargo requesting that the court make certain findings and declarations. Defendants MetLife and Fannie Mae oppose the motions.

For the reasons set out below, with one clarification, the motions should be granted.

**Factual Background**

This action arises from the foreclosure of plaintiffs' interest in certain real property. The pending motions raise the question whether defendant Metlife had the right to initiate a nonjudicial foreclosure of a deed of trust to which that property was subject. The events in the history of the property in question which are relevant to that question are briefly summarized below.

In September 1999, plaintiffs acquired the property (the Property) commonly known as 15522 SE Taggart Street, Portland, Oregon. The two parcels which comprise the Property are referred to as "Parcel 1" and "Parcel 2," where relevant.

On February, 2003, plaintiffs obtained two loans from Pacific Northwest Mortgage, Inc. (Pacific). The first loan was in the amount of $160,000, and the second was in the amount of $39,500. The loans were secured by separate Deeds of Trust encumbering both parcels, which were recorded in Multnomah County official records on February 28, 2003. Ticor Title was listed as the Trustee on the 2003 Deeds of Trust.

On March 24, 2003, Pacific assigned the Deeds of Trust to First Horizon Home Loan Corporation (First Horizon).

In June, 2003, plaintiffs obtained an approximately $50,000 line of credit with defendant Wells Fargo. They used the proceeds of that line of credit to pay off a loan with US Bank, and on June 20, 2003, Ticor Title tendered to First Tennessee a check in the amount of $40,009.09 along with a request that First Tennessee authorize Ticor Title "to release the lien of record." It appears that this was intended to obtain release of the Trust Deed securing the smaller of the two loans.

On November 21, 2003, Ticor Title executed a Release of Trust Deed (the Release) releasing the Deed of Trust that secured the $160,000 loan. The Release indicated that First Tennessee Bank, dba First Horizon, had received notice of the Release more than a month before Ticor Title recorded the release, and that Ticor Title had not received any "written objection to the execution or recordation of [the Release]." On December 2, 2003, Ticor Title recorded the Release in Multnomah County official records. Though the Release was executed and recorded, there is no evidence that plaintiffs repaid the $160,000 loan secured by the released Deed of Trust, and it appears that plaintiffs instead intended to pay off the smaller of the two loans.

On July 19, 2005, a lot line adjustment was recorded which added 4.63 feet from the original Parcel 1 to Parcel 2.

On August 15, 2005, nearly two years after Ticor Title had executed and recorded the release of the Deed of Trust securing the $160,000 loan, plaintiffs obtained a $300,000 loan ($300,000 loan) from First Horizon to be used for the construction of a single family residence on Parcel 2. This loan was secured by a trust deed ($300,000 Trust Deed) encumbering only Parcel 2, which was recorded in Multnomah County official records on August 15, 2005. Plaintiffs also obtained a second loan at that time, in the amount of $30,000 ($30,000 loan), from First Horizon. This loan was secured by a trust deed likewise encumbering only Parcel 2, which was recorded in Multnomah County on August 15, 2003. From the documents and the timing of the recordings, it is apparent that First Horizon assumed that Parcel 2 was not still encumbered by the earlier Deed of Trust securing the $160,000 loan, that the $300,000 Trust Deed would be in "first position," and that the $30,000 Trust Deed would be in "second position" as to Parcel 2.

On February 15, 2006, purporting to continue to act as a trustee, Ticor Title executed a document titled "<u>REFORMATION OF MISTAKEN RECONVEYANCE</u>." This document

stated that, on December 2, 2003, Ticor Title had erroneously "executed a reconveyance" of a trust deed encumbering plaintiffs' property that had been recorded on February 28, 2003. It added that

> The Trustee wishes to acknowledge that the mistaken Reconveyance was executed in error and contrary to the intent of the beneficiary and wishes to confirm that the lien of the Deed of Trust continues unaffected by the Mistaken Full Reconveyance.

The "reformation" was recorded in Multnomah County official records on February 24, 2006. From the record before the court, it is not possible to determine what prompted Ticor Title to conclude that it had earlier erred in releasing a trust deed, and to execute and record a document purporting to correct its error.

In January, 2007, plaintiffs borrowed $337,000 (2007 Loan) from Community Financial Corporation in order to pay off the $300,000 and $30,000 loans they had obtained from First Horizon. The 2007 Loan was secured by a trust deed (2007 Trust Deed) which was recorded in Multnomah County official records on January 10, 2007. The 2007 Trust Deed encumbered only Parcel 2. From the documents and the timing of the recordings, it is apparent that the 2007 Trust Deed was intended to be in "first position" on that property.

Through an Assignment of Deed of Trust recorded in Multnomah County official records on October 2, 2009, defendant Wells Fargo became the holder of the 2007 Trust Deed.

In April, 2009, First Horizon assigned the $160,000 Loan and corresponding 2003 Trust Deed to defendant MetLife. Metlife appointed defendant First American Title Insurance Company (FATCO) as successor trustee of that trust deed.

FATCO subsequently initiated nonjudicial foreclosure proceedings on the 2003 Trust Deed, and held a nonjudicial foreclosure sale of the Property on June 15, 2010. Metlife purchased the Property for $165,560.97, and conveyed it to Fannie Mae on July 21, 2010.

## Claims

Plaintiffs brought the present action against MetLife, Fannie Mae, Wells Fargo, and FATCO in September, 2010. As noted above, plaintiffs seek a declaration that the foreclosure sale and transfer to Fannie Mae were void, and a declaration that plaintiffs are consequently the "owners" of the Property. In its amended answer, defendant Wells Fargo brings a cross claim against MetLife and Fannie Mae seeking a declaration that the foreclosure is void, and that the 2003 Trust Deed does not encumber the Properties.

## STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. Id. at 630-31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985). No genuine issue for trial exists, however, where the

record as a whole could not lead the trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## Pending Motions

In their present motion for partial summary judgment, plaintiffs ask the court to find that:

> 1. The Trust Deed securing the $160,000 loan in 2003 "was conclusively released by the recording of the 'Release of Trust Deed' recorded on December 2, 2003;"
>
> 2. The recording of the "Reformation of Trust Deed" on February 24, 2006 "had no legal effect on the title;" and
>
> 3. The Trustee's sale that FATCO held on June 15, 2010 and subsequent recording of a Trustee's Deed based upon that sale are "ineffective to transfer any interest in the property."

Defendant Wells Fargo's motion for summary judgment is brought only as to its cross claim against MetLife and Fannie Mae.  In this motion, Wells Fargo seeks a declaration that "the June 15, 2010 nonjudical foreclosure sale of real property at issue in this case is null and void, and that neither MetLife nor Fannie Mae has any interest in the real property."

## Discussion

1. Effect of Ticor Title's Release and Purported Reformation

Disposition of the pending motions turns on the effect of Ticor Title's November, 2003 release of the Trust Deed securing the $160,000 loan plaintiffs obtained in February, 2003, and Ticor Title's subsequent execution and recordation of a "Reformation of Mistaken Reconveyance" that purported to negate the release.

The latter of these, the purported "reformation" of the reconveyance to the grantors, is the simpler issue: Though defendants MetLife and Fannie Mae do not now contend that the purported reformation reinstated the Trust Deed in question, I will briefly address this issue in order to create a full record for any possible review.

When Ticor Title recorded the release, it explicitly "fully released and reconveyed" the Trust Deed. Upon the release and reconveyance, it was no longer a trustee as defined under ORS § 86.705(8), and lacked the ability to take action affecting the title. Oregon Revised Statute § 93.120 provides that "[a]ny conveyance of real estate passes all the estate of the grantor, unless the intent to pass a lesser estate appears by express terms, or is necessarily implied in the terms of the grant." In releasing the Trust Deed, Ticor Title did not express the intent to pass a lesser estate than that it controlled as trustee, and nothing in the terms of the release implied anything other than a release of "all the estate" subject to its control. Accordingly, when it later purported to reform a mistaken reconveyance, Ticor Title had no legal authority to reinstate the Trust Deed.

Even if the release had not fully terminated any rights that Ticor Title had, as the trustee, the 2006 "Reformation of Mistaken Reconveyance" could not have had any effect on the validity

of the 2003 Trust Deed because such "reformation" was not recognized under Oregon law at that time. Oregon Revised Statute § 87.920 provides that

> Except where the filing of the document is specifically required or authorized by statute, no document filed for recording . . . shall create a lien or encumbrance upon or affect the title to the real . . . property of any person or constitute actual or constructive notice to any person of the information contained therein.

In 2006, when Ticor Title executed and recorded the "Reformation of Mistaken Reconveyance," documents purporting to reform conveyances of trust deeds were not "specifically required or authorized" under any Oregon statute. Accordingly, under the terms of ORS § 87.920, the reformation that Ticor Title recorded did not constitute "actual or constructive notice" of anything.

Under ORS § 86.722, which was enacted in 2009 and took effect on January 1, 2010, a trustee may now record a document to correct an error made concerning the status or effect of a recorded trust deed. Metlife and Fannie Mae do not contend that this statute has retroactive effect, and that contention would be futile. Where, as here, a statute is drafted in the present tense and includes no retroactivity clause, the legislature is presumed to have intended only prospective application. See, e.g., Newell v. Weston, 150 Or. App. 562, 569-70, 946 P.2d 691 (1997).

This leaves the question of the conclusiveness of Ticor Title's execution and recordation of the "Release of Trust Deed" in December, 2003. Defendants Metlife and Fannie Mae contend that the release was void because Ticor Title negligently executed and recorded it without the required request or notice. These defendants further contend that plaintiffs cannot rely on Ticor Title's error because it acted as their agent, and argue that the release did not affect cross-claimant Wells Fargo's interest because it was on notice that the release was recorded in error.

These arguments fail. Though Ticor Title appears to have erred in releasing the trust deed in question, under the circumstances giving rise to this action, any error did not negate the legal effect of the release. As trustee, Ticor Title had full authority to record the Release under the terms of ORS § 86.720, and the Release appeared to fully comply with the statutory requirements for validity under Oregon law. Oregon Revised Statute § 86.720(4) sets out seven specific elements that must be included in a valid release, and ORS § 86.720(6) sets out specific conditions under which a release may not be recorded. All of the required elements are set out in the Release, and no factors that would preclude recordation are indicated. Because the Release complied with the requirements set out in ORS §86.720, it was entitled to recordation. ORS § 86.720(5). Once the Release was recorded, it was, by statute, "deemed to be the equivalent of a reconveyance" of the Trust Deed. Id.

Upon recordation of the Release, Ticor Title no longer had any interest in the property or authority to take actions affecting interests or title in the Property that had been encumbered by the Trust Deed. The Trust Deed effectively ceased to exist, and the subsequent assignment of a trust deed to defendant MeLife transfered no interest in the property to MetLife. Under these circumstances, MetLife had no authority to appoint FATCO as a successor trustee, and FATCO had no authority to nonjudicially foreclose the properties that had been encumbered by the Trust Deed. For the reasons discussed above, Ticor Title's purported reformation did not restore that authority.

MetLife and Fannie Mae assert that Wells Fargo cannot prevail on its cross claim because it was on inquiry notice that the Release was executed and recorded in error. They contend that Wells Fargo was on notice because the Release "recited an amount tendered that

was only a fraction of the original balance owed," and "recited payment to a party different than the original beneficiary or the beneficiary of record."

These contentions fail, because the information included in the Release would not have alerted a reasonable entity in Wells Fargo's position that the Release was erroneous. As Wells Fargo correctly notes, a party is on inquiry notice only when another party's prior interest "may be determined through investigation based on facts available to the claimant that would cause a reasonable person to make such inquiry." Gorzeman v. Thompson, 162 Or App. 84, 93, 986 P.2d 29 (1999).

Gorzeman illustrates the kind of information that must be apparent in order to prompt a reasonable person to make further inquiry. There, the court found that a trust deed that incorrectly stated the amount of the debt put a subsequent mortgagee on inquiry notice as to the correct amount because the note, which accurately stated the correct amount, was attached to the recorded trust deed. Id. at 94.

Here, no such information would have been apparent to Wells Fargo's predecessor in interest. Instead, the Release showed only that the obligation secured by the trust deed in question had been paid in full, that the beneficiary had received notice and had an opportunity to object and did not do so, and that the beneficiary had received final payment. Even if the amount stated as paid in the Release was insufficient to fully discharge the amount plaintiffs owed at that time, a statement of the amount paid provided notice only that the beneficiary had accepted that sum as full payment of the outstanding amount of the debt. All the statutory requirements for a valid release were satisfied, and nothing would have put a reasonable subsequent lender on inquiry notice concerning the accuracy of the Release. For the reasons discussed above, the purported reformation could not constitute notice.

MetLife and Fannie Mae's assertion that Wells Fargo was on inquiry notice because the release "recited payment to a party different than the original beneficiary or the beneficiary of record" also fails. The record establishes that the original beneficiary under the 2003 Trust Deed assigned its interest in that instrument to First Horizon Home Loan Corporation, a division of First Tennessee Bank, which is listed on the release as the beneficiary "to whom payment was made." Under these circumstances, the reference to First Tennessee Bank as the beneficiary would not have put a reasonable person on inquiry notice concerning any possible error in the Release.

Metlife and Fannie Mae's assertion that plaintiffs are responsible for Ticor Title's conduct because it acted as their agent likewise fails. As plaintiffs correctly note, Ticor Title acted not only as a trustee under the Trust Deed and but also as an escrow agent for the loan that the Trust Deed secured. Plaintiffs also correctly note that, as an escrow agent, Ticor Title was not their agent, but instead was required to act as a neutral party "with no obligation to either party to the transaction except to carry out the terms of the escrow instructions." Barr v. Pratt, 105 Or App. 220, 224, 804 P.2d 496 (1991) (quoting McDonald v. Title Ins. Co. of Oregon, 49 Or. App. 1055, 1059, 621 P.2d 654 (1980), rev. denied, 290 Or. 727, 631 P.2d 340 (1981)).

2. **Disposition of the pending motions**

The record before the court supports only the conclusion that the Release was fully effective, that the purported "Reformation" was a nullity, that no "inquiry notice" concerning any error in the Release can be charged to Wells Fargo, and that Ticor Title was not acting as a true "agent" of plaintiffs when the Release was executed and recorded. Under these circumstances, the nonjudicial foreclosure giving rise to this action was not valid.

These conclusions require my recommendation that Wells Fargo's motion for summary judgment on its cross claim be granted. Accordingly, I recommend that the court declare that the nonjudicial foreclosure sale of the real property at issue in this action is null and void, and declare that neither MetLife nor Fannie Mae has any interest in the real property.

These conclusions also require my recommendation that plaintiffs' motion for partial summary judgment also be granted, with one clarification. The three components of the "findings" that plaintiffs seek in their present motion are fully set out above, and need not be repeated in their entirety here. In the second and third components of their motion, plaintiffs seek findings that the "Reformation" that Ticor Title had recorded in 2006 had no legal effect on the title to the property in question, and that the trustee's sale held on June 15, 2010, transferred no interest in the property. These requested findings are fully consistent with the declaration that Wells Fargo seeks, and are fully consistent with the above discussion.

The first component of plaintiffs' motion seeks a declaration that the Trust Deed at issue in this action was "conclusively" released when Ticor Title recorded it in December, 2003. Though this statement is technically correct, the term "conclusively" should be construed narrowly, particularly in light of plaintiffs' second claim for relief, which seeks a declaration that plaintiffs are "the owners" of the property that was foreclosed. In recommending that plaintiffs' motion for partial summary judgment be granted, I do not intend to in any way imply that the conclusion that the Trust Deed was "conclusively" released means that any unpaid portion of the loan secured by the Trust Deed has been extinguished. I likewise do not intend to in any way imply that, if plaintiffs ultimately obtain a declaration that they are " the owners" of the Property, that ownership excludes liability for any portion of the debt formerly secured by the Trust Deed that they have not paid. This clarification is needed because MetLife and Fannie Mae have

asserted that plaintiffs are attempting to “discharge their debt” based upon an error by Ticor Title, and I find no disavowal of that objective in plaintiffs’ memoranda.

**Conclusion**

Subject to the clarification set out above, plaintiffs’ motion for partial summary judgment (# 53) and defendant/cross claimant Wells Fargo’s motion for summary judgment on cross claim (# 50) should be GRANTED.

**Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due January 27th, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 10th day of January, 2012.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge